**Rodney Glen SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–00755–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 22, 1990.

James M. Leitner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Asst. Dist. Atty., Houston, for appellee.

Before O'CONNOR, WARREN and COHEN, JJ.

O'CONNOR, Justice.

A jury convicted Rodney Glen Sanders, appellant, of delivery of cocaine, found the two enhancement paragraphs to be true, and assessed punishment at 25 years confinement. Sanders appeals on four grounds. We reverse.

## I. The proof of enhancement

In his first point of error, Sanders contends the State did not prove a final conviction was entered against him in cause number 306233, as alleged in the first enhancement paragraph. There are two parts to Sanders' argument: The State did not prove a *final* conviction was entered in cause number 306233, and the State did not prove that he, Rodney Glen *Sanders,* was the same person who was convicted in cause number 306233.

Sanders pled "not true" to the two enhancement paragraphs in the indictment. The first enhancement paragraph, the one at issue here, alleged Sanders was convicted on February 2, 1982, in cause number 306233, of the felony of burglary of a building with intent to commit theft.

To prove that conviction, the State introduced three pages from the minutes of the 176th District Court of Harris County. The first page is titled "Judgment," and is dated February 5, 1980. In that document, the trial court found Rodney Glen *Rice* (not *Sanders*) guilty in cause number 306233 after he pled guilty to burglary of a building with intent to commit theft, committed on November 25, 1979. Rice was sentenced to four years in the Texas Department of Corrections (TDC), but the sentence was suspended and he was placed on probation for four years. The judgment is found at volume 56, page *477* of the minutes of the 176th District Court.

The second page of the minutes is titled "Order Revoking Probation and Sentence." It reflects that Rodney Glen *Rice's* probation in cause number 306233 for burglary of a building with intent to commit theft, was revoked and he was sentenced to two years in TDC on February 2, 1982. The order revoking probation is found at volume 56, page *478* of the minutes of the 176th District Court. The order is not signed.

The last of the 3 pages from the minutes recites the conditions of probation in cause number 306233. There is no volume number, page number, or signature on the last page.

The only certificate of authenticity on the three pages is on the reverse side of the last page. The certificate on the reverse side states:

STATE OF TEXAS
COUNTY OF HARRIS
I, Ray Hardy, District Clerk of Harris County, Texas, do hereby certify that the foregoing is a true and correct copy of the original record, now in my lawful custody and possession as appears of record in vol. 56 Page 477 of the minutes of said court on file in my office.

Witness my official hand and seal of office, this Aug 15 1988.

RAY HARDY, DISTRICT CLERK
Harris County, Texas
By (signature) Deputy

Sanders' counsel objected to the introduction of minutes in cause number 306233, because: (1) the minutes did not meet the requirement of a certified judgment; (2) the minutes did not meet the requirements of an exemplified judgment; (3) the State did not give the required 14 days notice that the minutes were going to be used; and (4) the State should have used a pen packet.

To prove that Sanders, the defendant on trial, was the same person as Rice, the person named in the court's minutes, the State introduced three jail cards for Rice. The jail cards, which each have one fingerprint, reflect an arrest for "burgl w-intent

theft" on 11–26–79 in cause number 030623301010. A police officer testified that the fingerprint on Rice's jail cards matched the fingerprint he took from Sanders in the courtroom.

Sanders' counsel objected to the State's offer of Rice's jail cards on two grounds: (1) the best evidence rule precluded its use as a substitute for the pen packet; and (2) the jail cards merely showed Rice was sentenced, not that Rice served time in the Texas Department of Corrections. The trial court overruled Sanders' objections to the minutes and the jail cards.

The evidence introduced to prove that Sanders was convicted in cause number 306233 include: the certified judgment entered on Rodney Glen Rice's guilty plea to burglary of a building with intent to commit theft in cause number 306233, and the uncertified copy of the order revoking probation. From the minutes, we know that Rice was convicted in cause number 306233 and his sentence was probated. Because the "order revoking probation" was not certified and no other evidence of revocation was presented, we cannot assume that his probation was revoked.

The jail cards were introduced to connect *Sanders*, the appellant, to the *Rice* judgment in cause number 306233. From the jail cards, we know that Rice was arrested for burglary with intent to commit theft on November 26 (not 25), 1979, in cause number 030623301010. From the officer's testimony, we know that the one fingerprint on Rice's jail cards matches a fingerprint of Sanders. From defense witnesses who testified during sentencing, we know that Rodney Glen Sanders was sometimes known as Rodney Glen Rice.

There are two issues: (1) Does the order revoking probation from the court's minutes satisfy the requirements of a judgment? and, (2) does the proof connect Sanders to Rice's conviction?

**A. The minutes**

■ A sentence is a mandatory order that authorizes penitentiary authorities to confine a convict. *Todd v. State*, 598 S.W.2d 286, 292 n. 6 (Tex.Crim.App. [Panel Op.] 1980). The first issue here is whether the minutes of the 176th court were self-authenticating documents.

**1. Authentication of the judgment**

■ A copy of a document used as evidence in trial may be either identified by a witness or, if offered without accompanying testimony, must be self-authenticated. Tex.R.Crim.Evid. 901(a) & (b) and 902. The State offered the minutes of the court as self-authenticating documents. No witness identified them.

Rule 902, Tex.R.Crim.Evid., permits a party to introduce a public document into evidence without extrinsic evidence of authenticity, if the document is accompanied by a certification that complies with paragraphs (1), (2), or (3) of rule 902, or with any statute, or court rule. *See Martinez v. State*, 754 S.W.2d 831, 833 (Tex.App.—Houston [1st Dist.] 1988, no pet.)

The district clerk's certificate identified page 477 as certified. Thus, the judgment on page 477 was a self-authenticating document and was properly admitted into evidence.

**2. Authentication of the Order Revoking Probation**

■ Because the district clerk's certificate identified only page 477 as certified, the certificate did not authenticate any other page from the court's minutes. The order revoking probation was on page *478* of the court's minutes. Thus, the copy of the order revoking probation was not a self-authenticating document.

The uncertified order revoking probation, therefore, did not prove that Rice's probation was revoked in cause number 306233. The State argues that this is not fatal to the enhancement, contending that the judgment of conviction (which was authenticated) and the information on the jail cards, proves the conviction in cause number 306233 was final. We must, therefore, review the information on the jail cards.

**B. The Jail Cards**

■ Here, in graph form, is a comparison of the allegation in the Sanders en-

hancement paragraph to the Rice judgment and the three jail cards for Rice. Our inquiry is: Do the jail cards prove that Rice's conviction was final in cause number 306233? Remember, from the officer's tes- timony, we know that Sanders' fingerprint is on the Rice jail cards. All we need is proof from the jail card that the person identified on the card was finally convicted.

| | Court | Cause number | Date of offense | Date of conviction | Offense: Burglary |
|---|---|---|---|---|---|
| Sanders Enhancement par. in indictment: | 176th | 306233 | | 2–2–82 | of bldg. w/ intent theft |
| Rice Judgment: | 176th | 306233 | 11–25–79 | 2–5–80 | of bldg. w/ intent theft |
| Jail card–1: | 176th | 030623301010 | 11–26–79 | 2–2–82 * | w/intent theft |
| | 176th | 000000070181 | 7–1–81 | 2–2–82 * | vehicle |
| Jail card–2: | 176th | 030623301010 | 11–26–79 | 2–2–82 * | w/intent theft |
| Jail card–3: | 176th | 030623301010 | 11–26–79 | 2–2–82 * | w/intent theft |

There are a number of problems with using the Rice jail cards to prove cause number 306233 was final.

### 1. Differences among the three jail cards

The jail cards do not have matching information. For example, the jail card form has a "release date." Each jail card is filled in with different information in that blank: Jail card–1 has 3–9–82; jail card–2 has 11–29–79; jail card–3 has 2–5–80.

Each jail card form has a "sentence begins date." The three jail cards with the case number 03062330101 have different entries in the "sentence begins date": Jail card–1 has no date; jail card–2 has 11–29–79; jail card–3 has 2–5–80.

Each jail card has a place to fill in the "release reason." The three jail cards that contain the case number 03062330101 have different entries in the space for "release reasons": Jail card–1 is filled in with the initials "RTDC"; jail card–2, with "PRBD"; and jail card–3, with "PROB." There is nothing in the record to explain the meaning of RTDC, PRBD, or PROB.

Each jail card has a place to fill in "arrest offense." One of the jail cards has two offenses in that blank: Jail card–1 has two offenses, "burg vehicle" and "burg w-intent theft." Any information about sentencing on jail card–1, therefore, could apply to the wrong offense.

### 2. Differences between the jail cards and the judgment

There are significant differences between the information on the jail cards and the information in the judgment. On the jail cards, the offense in cause number 030623301010 is described as burglary with intent to commit theft. In the judgment, the offense is described as burglary *of a building* with intent to commit theft.

The cause number on the two documents is also different. On the jail cards, the cause number is 0*306233* 01010, and in the judgment, 306233. Although the numbers are similar in some respects, the cause number on the jail cards contains six additional numbers.

* The jail cards refer to this as the "sentence begins date."

The date of the offense in the two documents is different. The date on the jail cards is 11-*26*-79, and the date on the judgment is 11-*25*-79.

After carefully considering all the information on the jail cards, we find that the three jail cards do not contain sufficient reliable information to prove that the person whose fingerprint appears on them was finally convicted in cause number 306233. Nothing on the jail cards proves that probation was revoked in cause number 306233. Thus, there is no proof that a final conviction was entered against Sanders/Rice.

We sustain the first point of error.

## II. Error in the charge

In his second point of error, Sanders urges the trial court erred in charging the jury on constructive transfer because there was no evidence to support it. The indictment alleged delivery of a controlled substance by actual transfer, constructive delivery, and offer to sell. At trial, the State abandoned the allegation of delivery by offer to sell. The charge to the jury defined delivery as actual or constructive transfer, and permitted Sanders' conviction upon a finding of either. Neither the indictment nor the charge referred to the law of parties. Sanders properly objected to the charge on the same ground he raises here on appeal.

Officer Richard Francis testified that on May 15, 1988, a confidential informant told him that Sanders was selling cocaine in an apartment complex. Officer Francis went to the apartment complex with the informant. The informant identified Sanders to the officer. The officer approached Sanders and asked him if he could buy 25 grams (a rock) of cocaine. At Sanders' request, the officer gave him $20, and Sanders went into a nearby apartment. After a couple of minutes, Sanders returned with a tan rock-like substance in a clear plastic baggie and handed it to Francis. The officer put the baggie in his pocket and told Sanders he would return to buy more cocaine. Officer Francis went back to his car, described Sanders to another officer (Ray Ollie), and told him to go ahead with the arrest.

The trial court must charge the jury on allegations in the indictment that the evidence supports. *Booker v. State*, 523 S.W.2d 413, 415 (Tex.Crim.App.1975); *see* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1990).

Officer Francis testified that he gave Sanders some money, Sanders went into an apartment, and Sanders handed him the baggie with the cocaine in it. The evidence does not support a charge to the jury on constructive transfer. Before we can reverse for error in the charge, however, we must be convinced that the error was "calculated to injure the rights of defendant." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We must assess the harm caused by the error and weigh it against the entire charge, the evidence, the argument of counsel, and any other relevant information in the record. *Id.* An error which has been properly preserved will call for reversal as long as the error is not harmless. *Id.*

The State argues that we need not consider whether the evidence is sufficient to prove constructive transfer because the evidence proves actual transfer. In support of its argument, the State cites *Vasquez v. State*, 665 S.W.2d 484, 486–87 (Tex.Crim. App.1984). In *Vasquez*, the Court of Criminal Appeals said it is proper for an indictment to allege different ways of committing the offense in the conjunctive and for the jury to be charged disjunctively. Proof of either is sufficient, *if defendant does not object to the charge on the ground of insufficient evidence*, or file a motion to force the State to elect. *Id.; Savant v. State*, 544 S.W.2d 408, 409 (Tex.Crim.App. 1976). If there is sufficient evidence to prove one of the two ways of committing the offense, this Court need not consider whether the evidence is also sufficient to prove the alternative. *Vasquez*, 665 S.W.2d at 486–87.

In *Savant*, defendant and a co-defendant were charged with committing assault by shooting the victim with an unlawful weapon. The evidence at trial showed that Savant hit the victim with the butt of a shot-

gun, and his co-defendant shot the victim. The jury charge required the jury to convict Savant if it found he carried a pistol and shot the victim. The trial court also charged the jury on the law of parties. Savant objected to the charge on the ground that it permitted his conviction on a theory not supported by the evidence, i.e., that he acted alone in the shooting. The Court of Criminal Appeals agreed and reversed. *Savant*, 544 S.W.2d at 409. The dissent argued that reversal was improper because the defendant did not demonstrate harm. *Id.* at 411 (Douglas, J., dissenting).

Sanders cites three pre-*Almanza* cases in arguing that the trial court in this case committed harmful error by charging the jury on the issue of constructive transfer. There are two reasons the cases are not persuasive: (1) the standard of review was different under the earlier cases; and (2) a vital fact is different—the indictment in this case alleged both actual and constructive transfer.

In the first case, *Carriera v. State*, 663 S.W.2d 1, 2 (Tex.Crim.App.1983), the charge permitted defendant's conviction for behavior not defined as an element of the offense for which he was indicted. The charges in the other two cases permitted conviction for behavior within the statute, but were means not charged in the indictment. *Armstead v. State*, 573 S.W.2d 231, 232 (Tex.Crim.App. [Panel Op.] 1978); *Robinson v. State*, 553 S.W.2d 371, 375 (Tex.Crim.App.1977).

Sanders also argues the prosecutor's mention of the law of parties during voir dire magnifies the harm. We do not agree. The prosecutor made one reference to the law of parties during a general discussion of a delivery case.

Sanders has not shown the error was "calculated to injure" his rights. We conclude the error was harmless beyond a reasonable doubt and overrule the second point of error.

### III. Ineffective assistance of counsel

In his third point of error, Sanders argues he was denied the effective assistance of counsel because his trial counsel allowed hearsay statements of the confidential informant into evidence. Sanders argues his trial counsel should have objected to the following statement:

Q. [Prosecutor] What caused him [Sanders] to come to your attention that day?

A. [Officer Francis] *On that day, May 15th, a confidential informant approached me and told me that an individual was selling crack cocaine in the Tealstone Apartment Complex.*

The informant's statement did not implicate appellant. When the witness later began to testify to hearsay that incriminated appellant, counsel promptly objected. Finally, this evidence clearly could not have harmed appellant under these facts, which show a face-to-face, hand-to-hand delivery. If this conduct by counsel was error, which we do not find, this is the only error by the defense attorney that appellant claims constitutes ineffective assistance. An isolated failure to object generally does not constitute ineffective assistance. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984). This is, at most, an isolated failure to object. Appellant cites no cases reversing for ineffective assistance for errors of this magnitude. *Compare Snow v. State*, 697 S.W.2d 663, 667 (Tex.App.—Houston [1st Dist.] 1985, pet. dism'd).

We overrule the third point of error.

### IV. Error in the prosecutor's argument

In his fourth point of error, Sanders challenges the State's jury argument at the guilt phase of trial.

The Texas Court of Criminal Appeals has identified four areas of permissible jury argument: summation of the evidence, reasonable deductions from the evidence, response to defendant's argument, or plea for law enforcement. *Gomez v. State*, 704 S.W.2d 770, 771 (Tex.Crim.App. 1985). To determine the propriety of an argument, we must consider the entire argument, not just isolated statements. *Mosley v. State*, 686 S.W.2d 180, 183 (Tex.Crim. App.1985). We regard a prosecutor's improper argument as reversible error when

it is extreme or manifestly improper, violates a mandatory statute, or injects new and harmful facts into the trial proceeding. *McKay v. State,* 707 S.W.2d 23, 36 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Phillips v. State,* 701 S.W.2d 875, 892 (Tex. Crim.App.1985), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986).

Arguments asking the jury to be the voice of the community have been upheld as proper pleas for law enforcement. *Brown v. State,* 508 S.W.2d 91, 96 (Tex. Crim.App.1974) ("the members of the jury will become a part of law enforcement ... and will be the voice of conscience of the people of this County and State").

As this Court noted in *Johnson v. State,* 773 S.W.2d 721, 729 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd), the Court of Criminal Appeals has distinguished between arguments "asking the jury to lend an ear to the community rather than a voice." *Prado v. State,* 626 S.W.2d 775, 776 (Tex.Crim.App. [Panel Op.] 1982). When a prosecutor asks a jury to lend an ear to the community, the prosecutor urges the jury to find the defendant guilty for reasons outside the record. When the prosecutor asks the jury to be the voice of the community, the prosecutor urges the jury to articulate its disapproval of defendant's behavior.

 The prosecutor argued:

This defendant was standing in front of a place where two people had told them was a crack house. He was pointed out. He sold them the drugs. The police came in and they arrested him. It's your choice. You can either say that yes, we believe you Officer Francis, that we want the police to do good police work, we want the police to do this kind of work, we want them to stop these drugs and say guilty, or you can say not guilty and you can say we don't believe you, we don't want [you to] do any work and we don't care.

DEFENSE COUNSEL: Objection, that's improper argument.

THE COURT: That's overruled.

PROSECUTOR: Those are going to be your choices. I would ask you to back our police department in their war, their crack down on crack as the officer testified to.

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

PROSECUTOR: I ask you to do your part. You may be sitting there wondering what you can do. This is right here, believe in our police officers—

DEFENSE COUNSEL: Objection again, Your Honor.

THE COURT: Sustained.

PROSECUTOR:—and find this person guilty of delivery of a controlled substance.

 The trial court properly overruled Sanders' objections to the first argument because it does not take the jury beyond the record. The later argument does not directly refer to community expectations, but it does urge the jury to make a finding of guilt for reasons outside the record— support of the fight against illegal drugs. The trial court properly sustained Sanders' objections to the argument. Sanders received all the relief he requested of the trial court. *See Stevens v. State,* 671 S.W.2d 517, 521 (Tex.Crim.App.1984) (an adverse ruling is necessary to preserve error). Sanders has not presented any error to this Court.

We sustain the first point of error, and reverse the trial court's judgment on sentence. We remand the cause to the trial court for a new punishment hearing. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1990).